TH:MWG/SMS/IC
F. #2024R00654

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ERNEST AIELLO,
NELSON ALVAREZ,
    also known as "Spanish G,"
LOUIS APICELLA,
    also known as "Lou Ap,"
AMMAR AWAWDEH,
    also known as "Flapper Poker"
    and "Flappy,"
SAUL BECHER,
CHAUNCEY BILLUPS,
MATTHEW DADDINO,
    also known as "Matty" and
    "The Wrestler,"
ERIC EARNEST,
    also known as "Spook,"
LEE FAMA,
JOHN GALLO,
MARCO GARZON,
THOMAS GELARDO,
    also known as "Juice,"
JAMIE GILET,
TONY GOODSON,
    also known as "Black Tony,"
KENNY HAN,
SHANE HENNEN,
    also known as "Sugar,"
OSMAN HOTI
    also known as "Albanian Bruce"
    and "Big Bruce,"
HORATIO HU,
    also known as "H,"
ZHEN HU,
    also known as "Jonathan Chan,"
    Jonathan Hu," "Scruli" and
    "Stanley,"

**FILED**

4:11 pm, Oct 09, 2025

U.S. DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

I N D I C T M E N T

Cr. No. 1:25-cr-00314-JMA-CHK
_____
(T. 18, U.S.C., §§ 924(d)(1),
981(a)(1)(C), 982(a)(1), 982(b)(1), 1349,
1951(a), 1955(a), 1955(d), 1956(h), 2
and 3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

DAMON JONES,
        also known as "Dee Jones,"
JOSEPH LANNI,
JOHN MAZZOLA,
        also known as "John South,"
CURTIS MEEKS,
        also known as "Curt,"
NICHOLAS MINUCCI,
MICHAEL RENZULLI,
ANGELO RUGGIERO, JR.,
ANTHONY SHNAYDERMAN,
        also known as "Doc,"
ROBERT STROUD,
        also known as "Black Rob,"
SETH TRUSTMAN,
SOPHIA WEI,
        also known as "Pookie," and
JULIUS ZILIANI,
        also known as "Jay,"

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Indictment unless otherwise indicated:

1.      Beginning in at least 2019, the defendants and their co-conspirators engaged in a complex fraud scheme to rig, or cheat at, illegal poker games in the Eastern District of New York and throughout the United States (the "Rigged Poker Scheme" or the "Scheme"). The defendants and their co-conspirators carried out the Rigged Poker Scheme by manipulating certain poker games at otherwise non-rigged, or "straight," illegal poker games, including weekly poker games occurring at locations on Washington Place (the "Washington Place Game") and Lexington Avenue (the "Lexington Avenue Game") in Manhattan, New York. The Washington Place Game and Lexington Avenue Game were "on record" with, and operated

with the express permission and approval of, members and associates of certain organized crime families of La Cosa Nostra, who provided support and protection for the games and collected owed debts from the games in exchange for a portion of the illegal gambling proceeds.

2.     Victims of the Rigger Poker Scheme (the "Victims") believed they were participating in "straight" illegal poker games and that they were gambling against other participants on equal footing.   In reality, however, the defendants and their co-conspirators, who constituted the remaining participants purportedly playing in the poker games, worked together on cheating teams (collectively, the "Cheating Teams") that used advanced wireless technologies to read the cards dealt in each poker hand and relay that information to the defendants and co-conspirators participating in the illegal poker games (collectively, the "Rigged Games").   The defendants and their co-conspirators then bet accordingly to ensure that the unsuspecting Victims lost money.   Through the Rigged Poker Scheme, the defendants and their co-conspirators defrauded Victims of millions of dollars.

<u>THE DEFENDANTS</u>

3.     The defendant ERNEST AIELLO was a resident of Wantagh, New York, and a member of the Bonanno Crime Family of La Cosa Nostra (the "Bonanno Crime Family").

4.     The defendant NELSON ALVAREZ, also known as "Spanish G," was a resident of Uniondale, New York, and a member of the Cheating Teams.

5.     The defendant LOUIS APICELLA, also known as "Lou Ap," was a resident of New Rochelle, New York, an associate of the Gambino Crime Family of La Cosa Nostra (the "Gambino Crime Family") and a member of the Cheating Teams.

6.     The defendant AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," was a resident of Brooklyn, New York, an associate of the Gambino Crime Family

3

and a member of the Cheating Teams. AWAWDEH was an organizer of the Washington Place Game and, with others, organized Rigged Games at the Washington Place Game, among other places.

7. The defendant SAUL BECHER was a resident of the Bronx, New York. BECHER was an organizer of the Lexington Avenue Game and, with others, organized Rigged Games at the Lexington Avenue Game, among other places.

8. The defendant CHAUNCEY BILLUPS was a resident of Oregon and a member of the Cheating Teams.

9. The defendant MATTHEW DADDINO, also known as "Matty" and "The Wrestler," was a resident of Franklin Square, New York, and was a member of the Genovese Crime Family of La Cosa Nostra (the "Genovese Crime Family").

10. The defendant ERIC EARNEST, also known as "Spook," was a resident of Missouri and a member of the Cheating Teams.

11. The defendant LEE FAMA was a resident of Brooklyn, New York, and a member of the Gambino Crime Family.

12. The defendant JOHN GALLO was a resident of Brooklyn, New York, an associate of the Gambino Crime Family and a member of the Cheating Teams. GALLO was an organizer of the Washington Place Game.

13. The defendant MARCO GARZON was a resident of New Jersey and a member of the Cheating Teams.

14. The defendant THOMAS GELARDO, also known as "Juice," was a resident of Scarsdale, New York, an associate of the Bonanno Crime Family and later an associate of the Genovese Crime Family.

4

15.     The defendant JAMIE GILET was a resident of Jericho, New York, and a member of the Cheating Teams.

16.     The defendant TONY GOODSON was a resident of Georgia. GOODSON worked with others to provide cheating technology to co-conspirators in the Scheme and was also a member of the Cheating Teams.   GOODSON participated in Rigged Games at the Lexington Avenue Game, among other places.

17.     The defendant KENNY HAN was a resident of Queens, New York, and a member of the Cheating Teams.   HAN participated in Rigged Games at the Lexington Avenue Game, among other places.

18.     The defendant SHANE HENNEN, also known as "Sugar," was a resident of Pennsylvania.   HENNEN organized Rigged Games, provided cheating technology to other co-conspirators in the Scheme to use in Rigged Games in exchange for a portion of the criminal proceeds from the Rigged Games, and was also a member of the Cheating Teams.

19.     The defendant OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," was a resident of New Jersey and provided security at the Lexington Avenue Game.

20.     The defendant HORATIO HU, also known as "H," was a resident of Queens, New York, and a member of the Cheating Teams.

21.     The defendant ZHEN HU, also known as "Jonathan Chan," Jonathan Hu," "Scruli" and "Stanley," was a resident of Brooklyn, New York.   ZHEN HU was an organizer of the Lexington Avenue Game and, with others, organized Rigged Games at the Lexington Avenue Game, among other places.

22.     The defendant DAMON JONES, also known as "Dee Jones," was a resident of Texas and a member of the Cheating Teams.

23.     The defendant JOSEPH LANNI was a resident of Staten Island, New York, and a member and captain in the Gambino Crime Family.

24.     The defendant JOHN MAZZOLA, also known as "John South," was a resident of Georgia and a member of the Cheating Teams.

25.     The defendant CURTIS MEEKS, also known as "Curt," was a resident of Texas.  MEEKS worked with others to provide cheating technology to participants in the Scheme.

26.     The defendant NICHOLAS MINUCCI was a resident of East Northport, New York, an associate of the Gambino Crime Family and a member of the Cheating Teams.

27.     The defendant MICHAEL RENZULLI was a resident of Islip, New York, and a member of the Cheating Teams.

28.     The defendant ANGELO RUGGIERO, JR. was a resident of Howard Beach, New York, and was a member of the Gambino Crime Family.

29.     The defendant ANTHONY SHNAYDERMAN, also known as "Doc," was a resident of Brooklyn, New York.  SHNAYDERMAN laundered criminal proceeds from the Rigged Poker Scheme.

30.     The defendant ROBERT STROUD, also known as "Black Rob," was a resident of Kentucky.  STROUD organized Rigged Games, provided cheating technology to other participants in the Scheme to use in Rigged Games in exchange for a portion of the criminal proceeds, and was also a member of the Cheating Teams.

31.     The defendant SETH TRUSTMAN was a resident of Queens, New York, an associate of the Lucchese Crime Family of La Cosa Nostra and a member of the Cheating Teams.  TRUSTMAN was an organizer of the Lexington Avenue Game and, with others,

6

organized Rigged Games and illegal poker games at the Lexington Avenue Game, among other places.

  32. The defendant SOPHIA WEI, also known as "Pookie," was a resident of Queens, New York, and a member of the Cheating Teams.

  33. The defendant JULIUS ZILIANI, also known as "Jay," was a resident of New Jersey and a member of the Bonanno Crime Family.

THE RIGGED POKER SCHEME

  34. The defendants AMMAR AWAWDEH, ZHEN HU, ROBERT STROUD and SETH TRUSTMAN, together with others, organized and participated in Rigged Games, as well as "square" illegal poker games at various locations in New York City, including the Washington Place Game and the Lexington Avenue Game, and at other locations throughout the United States including East Hampton, New York.

  35. The defendants TONY GOODSON, SHANE HENNEN, CURTIS MEEKS and ROBERT STROUD, together with others, supplied other defendants and their co-conspirators in the Scheme with cheating technology.

  36. On numerous occasions, certain defendants and their co-conspirators invited the Victims, who were often wealthy, to Rigged Games.  To attract the Victims, in some instances, well-known former professional athletes participated in the Rigged Poker Scheme and were referred to as "Face Cards."  The Face Cards were members of the Cheating Teams and received a portion of the criminal proceeds in exchange for their participation in the Scheme. The defendants CHAUNCEY BILLUPS and DAMON JONES, both of whom are former professional basketball players, were Face Cards and members of the Cheating Teams.

7

37.     At the Rigged Games, the members of the Cheating Teams—including the defendants and their co-conspirators—used card shuffling machines that were purportedly randomly shuffling the playing cards to ensure fairness (the "Rigged Shuffling Machines"). However, the Rigged Shuffling Machines were secretly altered to use concealed technology to read the cards in the deck, predict which player at the table had the best poker hand, and relay that information via interstate wires to an off-site operator (the "Operator").   The Operator then communicated that information by cellular telephone to a member of the Cheating Team seated at the Rigged Game poker tables, referred to as the "Quarterback" or "Driver," who used secret signaling to share the information with the other members of the Cheating Teams playing in the Rigged Games.   The Cheating Teams used the information from the Quarterback to defraud the Victims, who believed they were playing "straight" illegal poker games.   At times, the defendants also utilized other cheating technologies such as electronic poker chip trays that could secretly read cards placed on the poker table; card analyzers that utilized technology loaded onto decoy cellular telephones that could surreptitiously detect which cards were on the table; and playing cards that had markers visible only to individuals wearing specially designed contact lenses or sunglasses.

38.     With respect to poker games held in the New York City area, members and associates of the Bonanno, Gambino and Genovese Crime Families, used threats and intimidation to assure payment of debts from the Rigged Games and the "square" illegal poker games organized by the defendants AMMAR AWAWDEH, ZHEN HU, ROBERT STROUD and SETH TRUSTMAN and their co-conspirators, as well as to "protect" the games from competition and other potential threats.   In exchange, members and associates of the Bonanno, Gambino and Genovese Crime Families received portions of the proceeds from the Rigged

8

Games and the "square" illegal poker games.  The defendants ERNEST AIELLO, THOMAS GELARDO and JULIUS ZILIANI received proceeds on behalf of the Bonanno Crime Family. The defendants JOHN GALLO, LEE FAMA, JOSEPH LANNI and ANGELO RUGGIERO, JR., received proceeds on behalf of the Gambino Crime Family.  The defendant MATTHEW DADDINO received proceeds on behalf of the Genovese Crime Family.  In addition to receiving proceeds from the Rigged Games and "square" illegal poker games, certain members and associates of the Gambino Crime Family participated on Cheating Teams, including the defendants AMMAR AWAWDEH, LOUIS APICELLA, GALLO and NICHOLAS MINUCCI.

39.     To conceal the nature and extent of the Rigged Poker Scheme, as well as the proceeds from "square" illegal poker games, the defendants and their co-conspirators laundered their criminal proceeds through shell companies and third parties.  The defendant ANTHONY SHNAYDERMAN and his associates and entities laundered the proceeds from the Rigged Games and the "square" illegal poker games for other defendants and their co-conspirators.  In exchange for a fee, SHNAYDERMAN received payments from Victims of the Rigged Games and the "square" illegal poker games and provided cash or other forms of payment, such as cryptocurrency, to the defendants, including, among others, the defendants AMMAR AWAWDEH, ROBERT STROUD and SETH TRUSTMAN.  The defendants also sent SHNAYDERMAN proceeds from the Rigged Games and "square" illegal poker games through wire transfers and other means, which SHNAYDERMAN, for a fee, converted to cash for the defendants.

40.     For example, in furtherance of the Rigged Poker Scheme, in or around April 2019, several of the defendants participated in Rigged Games in Las Vegas, Nevada, at which they defrauded Victims of at least $50,000.  The defendants CHAUNCEY BILLUPS,

9

ERIC EARNEST, JAMIE GILET, ROBERT STROUD and SOPHIA WEI organized and

participated in these Rigged Games using a Rigged Shuffling Machine supplied by STROUD.

41.    As another example, in or around June and July 2023, several of the

defendants participated in Rigged Games at the Lexington Avenue Game, at which they

defrauded John Doe #1, an individual whose identity is known to the Grand Jury, of

approximately $1.8 million.   The defendants AMMAR AWAWDEH, JOHN GALLO, MARCO

GARZON, KENNY HAN, ZHEN HU, JOHN MAZZOLA and SETH TRUSTMAN organized

and participated in the games involving John Doe #1 using a Rigged Shuffling Machine supplied

by the defendants TONY GOODSON and ROBERT STROUD.   The defendants ERNEST

AIELLO, MATTHEW DADDINO, LEE FAMA, JOHN GALLO, THOMAS GELARDO and

JULIUS ZILIANI received a portion of the criminal proceeds from the games involving John

Doe #1 on behalf of the Bonanno, Gambino and Genovese Crime Families.   The defendant

ANTHONY SHNAYDERMAN and his co-conspirators laundered at least $100,000 of the

criminal proceeds from the games involving John Doe #1.

42.    As another example, in or about June 2023, several of the defendants

participated in Rigged Games in East Hampton, New York, at which they defrauded John

Doe #2 and John Doe #3, individuals whose identities are known to the Grand Jury, of at least

$46,500 and $105,000, respectively.   The defendants LOUIS APICELLA, AMMAR

AWAWDEH, JOHN GALLO, TONY GOODSON, KENNY HAN, OSMAN HOTI, HORATIO

HU, JOHN MAZZOLA, NICHOLAS MINUCCI and ROBERT STROUD organized and

participated in the Rigged Games involving John Doe #2 and John Doe #3 using a Rigged

Shuffling Machine supplied by GOODSON and STROUD.   The defendant ANTHONY

SHNAYDERMAN and his co-conspirators laundered criminal proceeds from the Rigged Games involving John Doe #2 and John Doe #3.

43.    As another example, in or about September 2024, several of the defendants participated in Rigged Games in Miami, Florida, at which they defrauded John Doe #4, an individual whose identity is known to the Grand Jury, of at least $60,000.   The defendants NELSON ALVAREZ, JAMIE GILET, TONY GOODSON, KENNY HAN, JOHN MAZZOLA, MICHAEL RENZULLI and ROBERT STROUD organized and participated in the Rigged Games involving John Doe #4 using a Rigged Shuffling Machine supplied by GOODSON and STROUD.   The defendant ANTHONY SHNAYDERMAN laundered criminal proceeds from the Rigged Games involving John Doe #4.

44.    Overall, from approximately April 2019 through the present, the Rigged Poker Scheme caused losses to the Victims of at least $7,150,000.

45.    On several occasions, the defendants and their co-conspirators used threats of force and violence to secure the repayment of debts from illegal poker games.   Among other instances, in or about and between November 2022 and February 2023, the defendants THOMAS GELARDO, ZHEN HU and JULIUS ZILIANI conspired to and did extort John Doe #5, an individual whose identity is known to the Grand Jury, to secure the repayment of debt from illegal poker games.   Similarly, in or about and between September 2023 and October 2023, the defendants SAUL BECHER, ZHEN HU and SETH TRUSTMAN conspired to and did extort John Doe #6, an individual whose identity is known to the Grand Jury, to secure the repayment of debt from illegal poker games.

46.    In addition, on one occasion, several of the defendants conspired to steal a Rigged Shuffling Machine from John Doe #7, an individual whose identity is known to the

Grand Jury, who had previously supplied Rigged Shuffling Machines.   Specifically, on or about

September 7, 2023, the defendants AMMAR AWAWDEH, OSMAN HOTI, JOHN MAZZOLA,

NICHOLAS MINUCCI and ROBERT STROUD conspired to commit and committed a gunpoint

robbery of John Doe #7 to steal a specific model of Rigged Shuffling Machine from John Doe #7

that the defendants wanted to use in the illegal poker games.

COUNT ONE
(Wire Fraud Conspiracy)

47.     The allegations contained in paragraphs one through 46 are realleged and

incorporated as if fully set forth in this paragraph.

48.     In or about and between April 2019 and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ERNEST AIELLO, NELSON ALVAREZ, also known as "Spanish G," LOUIS

APICELLA, also known as "Lou Ap," AMMAR AWAWDEH, also known as "Flapper Poker"

and "Flappy," SAUL BECHER, CHAUNCEY BILLUPS, MATTHEW DADDINO, also known

as "Matty" and "The Wrestler," ERIC EARNEST, also known as "Spook," LEE FAMA, JOHN

GALLO, MARCO GARZON, THOMAS GELARDO, also known as "Juice," JAMIE GILET,

TONY GOODSON, also known as "Black Tony," KENNY HAN, SHANE HENNEN, also

known as "Sugar," HORATIO HU, also known as "H," ZHEN HU, also known as "Jonathan

Chan," "Jonathan Hu," "Scruli" and "Stanley," DAMON JONES, also known as "Dee Jones,"

JOHN MAZZOLA, also known as "John South," CURTIS MEEKS, also known as "Curt,"

NICHOLAS MINUCCI, MICHAEL RENZULLI, ANGELO RUGGIERO, JR., ANTHONY

SHNAYDERMAN, also known as "Doc," ROBERT STROUD, also known as "Black Rob,"

SETH TRUSTMAN, SOPHIA WEI, also known as "Pookie," and JULIUS ZILIANI, also

known as "Jay," together with others, did knowingly and intentionally conspire to devise a

12

scheme and artifice to defraud the Victims, including John Doe #1, John Doe #2, John Doe #3 and John Doe #4, and to obtain money and property from the Victims by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Operation of an Illegal Gambling Business – Washington Place Game)

49.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

50.     In or about and between January 2021 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," MATTHEW DADDINO, also known as "Matty" and "The Wrestler," LEE FAMA, JOHN GALLO, JOSEPH LANNI, NICHOLAS MINUCCI, MICHAEL RENZULLI and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal poker games located in and around Washington Place, New York, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous

operation for one or more periods in excess of thirty days and had a gross revenue of at least

$2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT THREE
(Operation of an Illegal Gambling Business – Lexington Avenue Game)

51.    The allegations contained in paragraphs one through 46 are realleged and

incorporated as if fully set forth in this paragraph.

52.    In or about and between January 2022 and October 2023, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ERNEST AIELLO, SAUL BECHER, THOMAS GELARDO, also known as "Juice,"

TONY GOODSON, also known as "Black Tony," KENNY HAN, OSMAN HOTI, also known

as "Albanian Bruce" and "Big Bruce," ZHEN HU, also known as "Jonathan Chan," "Jonathan

Hu," "Scruli" and "Stanley," SETH TRUSTMAN and JULIUS ZILIANI, also known as "Jay,"

together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct

and own all or part of an illegal gambling business, to wit: a gambling business involving illegal

poker games located in and around Lexington Avenue, New York, New York, which operated in

violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, and

20.00, and which involved five or more persons who conducted, financed, managed, supervised,

directed and owned all or part of such business and which remained in substantially continuous

operation for one or more periods in excess of thirty days and had a gross revenue of at least

$2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT FOUR
### (Money Laundering Conspiracy)

53.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

54.     In or about and between April 2019 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NELSON ALVAREZ, also known as "Spanish G," LOUIS APICELLA, also known as "Lou Ap," AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," SAUL BECHER, CHAUNCEY BILLUPS, MATTHEW DADDINO, also known as "Matty" and "The Wrestler," ERIC EARNEST, also known as "Spook," JOHN GALLO, MARCO GARZON, THOMAS GELARDO, also known as "Juice," JAMIE GILET, TONY GOODSON, also known as "Black Tony," KENNY HAN, SHANE HENNEN, also known as "Sugar," HORATIO HU, also known as "H," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," DAMON JONES, also known as "Dee Jones," JOHN MAZZOLA, also known as "John South," CURTIS MEEKS, also known as "Curt," NICHOLAS MINUCCI, MICHAEL RENZULLI, ANTHONY SHNAYDERMAN, also known as "Doc," ROBERT STROUD, also known as "Black Rob," SETH TRUSTMAN, SOPHIA WEI, also known as "Pookie," and JULIUS ZILIANI, also known as "Jay," together with others, did knowingly and intentionally conspire:

(a)     to conduct one or more financial transactions, to wit: transactions in and affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions involved the proceeds of one or more specified unlawful activities, to wit: (i) wire fraud, in violation of Title 18, United States Code, Section 1343; and (ii) the operation of

illegal gambling businesses, in violation of Title 18, United States Code, Section 1955, knowing

that the property involved in the financial transactions represented the proceeds of some form of

unlawful activity, and knowing that the transactions were designed in whole and in part to

conceal and disguise the nature, location, source, ownership and control of the proceeds of the

specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i);

and

          (b)     to engage in one or more monetary transactions within the United

States in and affecting interstate and foreign commerce, by, through and to one or more financial

institutions, in criminally derived property of a value greater than $10,000 and derived from one

or more specified unlawful activities, to wit: (i) wire fraud, in violation of Title 18, United States

Code, Section 1343; and (ii) the operation of illegal gambling businesses, in violation of Title 18,

United States Code, Section 1955, contrary to Title 18, United States Code, Section 1957(a).

        (Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNT FIVE
(Hobbs Act Extortion Conspiracy – John Doe #5)

55.     The allegations contained in paragraphs one through 46 are realleged and

incorporated as if fully set forth in this paragraph.

56.     In or about and between November 2022 and February 2023, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants THOMAS GELARDO, also known as "Juice," ZHEN HU, also known as "Jonathan

Chan," "Jonathan Hu," "Scruli" and "Stanley," and JULIUS ZILIANI, also known as "Jay"

together with others, did knowingly and intentionally conspire to obstruct, delay and affect

commerce, and the movement of articles and commodities in commerce, by extortion, in that the

defendants and others obtained property, to wit: United States currency, from John Doe #5 with

16

his consent, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT SIX
(Hobbs Act Robbery Conspiracy – John Doe #7)

57.      The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

58.      On or about September 7, 2023, within the Eastern District of New York and elsewhere, the defendants AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," JOHN MAZZOLA, also known as "John South," NICHOLAS MINUCCI and ROBERT STROUD, also known as "Black Rob," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of a Rigged Shuffling Machine from John Doe #7.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT SEVEN
(Hobbs Act Extortion Conspiracy – John Doe #6)

59.      The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

60.      In or about and between September 2023 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SAUL BECHER, ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," and SETH TRUSTMAN, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and

17

commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: United States currency, from John Doe #6 with his consent, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT ONE

61.     The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

62.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided

without difficulty;

18

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO AND THREE

63.     The United States hereby gives notice to the defendants charged in Counts Two and Three that, upon their conviction of either of those offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d), which provides for the forfeiture of any property, including money, used in violation of Title 18, United States Code, Section 1955.

64.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
<u>AS TO COUNT FOUR</u>

65.     The United States hereby gives notice to the defendants charged in Count Four that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

66.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

Type text here

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS FIVE THROUGH SEVEN

67.     The United States hereby gives notice to the defendants charged in Counts Five through Seven that, upon their conviction of any of such offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any violation of any other criminal law of the United States.

68.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 21,

United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

FOREPERSON

By *David Pitluck, Assistant U.S. Attorney*

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

22